UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

-vs-                                         Case No.  5:05-cv-343-Oc-10GRJ

JOHN W. TODD; MICHAEL J. TODD;
WILLS TRANSPORT, INC.,

        Defendants.
_____

## O R D E R

This case for foreclosure of the United States' federal tax liens on residential property is before the Court for consideration of the United States' motion for summary judgment (Doc. 18) and Defendant Michael J. Todd's ("Michael") cross-motion for summary judgment (Doc. 24), both of which the parties have thoroughly briefed (Doc. 23, 34, 26, 45).

The existence of the tax liability in this case is undisputed.  However, upon review of the case file and all relevant papers, and for the reasons that follow, the parties' motions are due to be denied in part because questions of material fact remain concerning the status of Michael as Defendant John W. Todd's ("John") nominee in relation to the subject property.

**Background and Facts**

The facts in this case as stated by the Government, and adopted - with some additions - by the Defendants, are as follows:

John filed individual tax returns for tax years 1996 and 1997 claiming no tax liability. John attached to his 1996 and 1997 tax returns a self-authored, two-page narrative asserting, among other things, that the federal income tax laws do not apply to him. At his deposition in this case, John testified that: ". . . I couldn't find anything in the Internal Revenue Code that made me liable for tax. I looked in the index, in the front table contents under liabilities, and there wasn't a code section that made you liable for income taxes . . . ." John continues to believe today that he is not liable for federal income taxes.

The Internal Revenue Service conducted an examination of John's tax liability for 1996 and 1997, and made assessments of federal income tax, penalties and interest in the amount of $71,095.86 for the 1996 tax year and $107,818.13 for the 1997 tax year. Despite notice and demand for payment, John has refused or neglected to pay his assessed income tax liabilities for tax years 1996 and 1997. As of August 11, 2006, John owes $239,789.65 for his tax year 1996 and 1997 income tax liabilities, plus interest and statutory additions thereafter as provided by law.

Michael, the son of John, lives in Brunswick, Maryland. In June 2000, at the suggestion of his father John, Michael purchased real property in Ocala, Florida,

located specifically at 300 S.E. 48th Avenue, Ocala, Florida, 34471 (the "subject property"). John lives on the subject property and pays rent to Michael, who in turn pays the mortgage and other property expenses. Michael never visited the subject property prior to its purchase and, in fact, did not actually see it until three years later.

Michael purchased the subject property for $197,000, financing the entire amount with a mortgage in favor of Defendant Wills Transport, Inc. ("Wills Transport"). Wills Transport is a company set up by Michael's grandmother - and John's mother - Ivy Todd ("Ivy"), who is now deceased. John is treasurer of Wills Transport. Michael had an adjusted gross income of $22,372 in tax year 2000, the year that he purchased the subject property. Michael never applied for a mortgage with Wills Transport, nor has he ever received a bill or correspondence from the company, even though he has missed several monthly mortgage payments.

Michael receives monthly rental payments on the subject property from John in cash or by money order. Michael uses the monthly rental payments he receives from John to pay his mortgage payment to Wills Transport, which Michael mails to a post office box in Ocala, Florida. John, in turn, receives the mortgage payments from the post office box in Ocala, Florida, and causes them to be deposited into a Wills Transport bank account held in the country of Belize. When asked whether he has signatory authority and/or control over the funds held in the Belize bank account, John asserted his Fifth Amendment right against self-incrimination.

At the time that Michael purchased the subject property with a mortgage from Wills Transport, John was aware of his tax liability to the IRS. When asked about the ownership interests in the subject property, John testified that:

> A: Wills [Transport] was the company [my mother] had started so she could pass money on to my son. I'm not allowed to own anything. So, you know.
>
> Q: Why aren't you allowed to own anything?
>
> A: Because you guys would take it.
>
> Q: So that's why you didn't take title to the [subject property] because we would take it?
>
> A: Well, that's why I'm not allowed to own anything. Anything I own you guys would take, so.

On May 31, 2002, a delegate of the Secretary of the Treasury filed a Notice of Federal Tax Lien against John in the public records of Marion County, Florida, with respect to his federal income tax liabilities for tax years 1996 and 1997. On April 22, 2003, a delegate of the Secretary of the Treasury filed a Notice of Federal Tax Lien against Michael, as nominee of John, in the public records of Marion County Florida, with respect to John's federal income tax liabilities for tax years 1996 and 1997.

United States' Motion for Summary Judgment at 2-6 (edited for consistency and readability and record citations omitted).

Michael adds the following facts in his response and cross-motion, which the United States claims are immaterial:

> Michael was offered the opportunity to invest by ownership in Florida real estate by means of money from his grandmother Ivy, not from John.  In order to invest in Florida real estate, Michael borrowed money from Wills Transport, which was funded by Ivy, and not by John.  As a dual benefit of this investment, it was Michael's intent and Ivy's intent that the real estate would serve as a home for her to live in for the rest of her life.  John lived with Ivy in that home.  He provided care for her until she died about five years after the house was purchased.  During that time they paid rent to Michael, as owner, who in turn paid the mortgage to Wills Transport.  Michael has all along paid for the maintenance, insurance, and other expenses of the house.

Michael's Response and Cross-Motion at 4-5 (edited for consistency and readability and record citations omitted).

On July 29, 2006, the United States filed its Complaint, in which it sought the following relief:

(a) That this Court award judgment that the defendant John W. Todd is indebted to the United States for unpaid federal income taxes for the years 1996 and 1997 in the amount of $217,515.53 as of March 15, 2005, less later credits and payments, plus interest and statutory additions thereon as allowed by law from the dates of notice and demand.

(b) That this Court determine that the United States has valid and subsisting federal tax liens that attach to all property and rights to property of defendant John W. Todd.

(c) That this Court determine and decree that defendant Michael J. Todd holds title to the subject property as nominee for defendant John W. Todd, and that

>   defendant John W. Todd is the true and equitable owner of the subject property.
>
> (d) That all claims to, and liens upon the [subject property] be fully determined and adjudicated by this Court.
>
> (e) That this Court order the foreclosure of the United States' federal tax liens against the [subject property].
>
> (f) That this Court order that [the subject property] be sold in accordance with the law and practice of this Court, and that the proceeds of the sale be distributed in accordance with the findings of this Court and the rights of the United States and the other defendants to this action.

United States' Complaint (Doc. 1) at 4-5. In its Complaint, the United States makes no allegation and seeks no determination that Wills Transport is the nominee or alter ego of John. Only in its most recent filing - its sur-reply to Michael's cross-motion - does the United States explicitly make the allegation that Wills Transport is the nominee or alter ego of John. The Government states that: "each month, Michael Todd (nominee no. 1) receives money from John Todd to pay Wills Transport (nominee no. 2) for the subject property." United States' Sur-reply at 3.

Following Wills Transport's failure to answer the Complaint, and upon motion by the United States, the Court entered an Order (Doc. 32) granting default judgment against Wills Transport, and finding that it had "no enforceable lien upon or interest in" the subject property.

## Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." Samples on Behalf of Samples v. Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). As the Supreme Court held in Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." Rollins v. Techsouth, 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.

## Discussion

The United States has presented undisputed evidence of John's tax liabilities and has established that it has valid and subsisting federal tax liens that attach to all property and rights to property of John. Accordingly, the remaining issue before this Court is

whether there remains a genuine issue as to any material fact, and whether either the United States or Michael is entitled to judgment as a matter of law concerning the nominee status of Michael.

It is well settled that the "[p]roperty of the nominee or alter ego of a taxpayer is subject to the collection of the taxpayer's tax liability." Shades Ridge Holding Co. v. United States, 888 F.2d 725, 728 (11th Cir. 1989) (citing G.M. Leasing Corp. v. United States, 429 U.S. 338, 250-51, 97 S. Ct. 619, 50 L. Ed. 2d 530 (1977)). "A nominee is one who holds bare legal title to property for the benefit of another." Scoville v. United States, 250 F.3d 1198, 1202 (8th Cir. 2001) (citing Black';s Law Dictionary (7th Ed. 1999)). "The issue under either state or federal law depends upon who has 'active' or 'substantial' control." Shades Ridge, 888 F.2d at 728. "[N]ominee in its commonly accepted meaning connotes the delegation of authority to the nominee in a representative or nominal capacity only, and does not connote the transfer or assignment to the nominee of any property in or ownership of the rights of the person nominating him." United States v. Gilbert, 244 F.3d 888, 902 n.37 (11th Cir. 2001) (quoting Schuh Trading Co. v. Comm'r, 95 F.2d 404, 411 (7th Cir. 1983)). In determining whether an individual is the nominee of a taxpayer, courts have looked to various factors, including "whether the purported beneficial owner made personal use of the assets nominally held by another, how the assets were insured and managed, the relationship between the parties or entities, and whether consideration was paid for transfers." Scoville, 250 F.3d at 1202.

At this stage in the proceedings, key issues of fact remain that prevent the Court from determining whether or not Michael is the nominee of John in relation to the subject property. For example, although the United States has provided some circumstantial evidence in concert with innuendo and allegation, the Court cannot say that it is an undisputed fact that the funds used to purchase the subject property were owned by John, or a nominee or alter ego of John. If the funds used to purchase the subject property have no connection to John, then it is unlikely that Michael is his nominee as to that property. See Shades Ridge, 888 F.2d at 729 (the taxpayer funded the nominee/corporation with his gambling profits that gave rise to the tax liabilities at issue); Morris v. United States, 813 F.2d 343, (11th Cir. 1987) (the property that was levied by the United States was purchased with a check from the nominee/girlfriend's bank account, which was funded by the taxpayer). In addition, the Government has alleged in its response to Michael's cross-motion that John has devised a "sophomoric and transparent" fraudulent scheme whereby a single rent/mortgage payment is recycled through John's, Michael's and Wills Transport's bank accounts. However, the United States has provided absolutely no evidence of this alleged scheme. Finally, disputed issues of material facts are peppered throughout the United States' sur-reply, in which it: (1) asserts that Ivy's donative intent "is a red herring;" (2) "presumes" that "[i]f Michael Todd's grandmother was expending her own funds for the purchase of the subject property and wished for her grandson to own it . . . she would have gifted it directly to her grandson;" and (3) belatedly alleges that Wills Transport is the nominee or alter ego of John.

Owing in large part to the lack of a bright-line test for the determination of whether a person holds property as a nominee and the resulting factor-based nature of the Court's inquiry in a case like this, the Court cannot say that the United States - or Michael - has established the nonexistence of a triable issue of fact. While the United States may likely have evidence supporting Michael's status as the nominee of John in relation to the subject property, viewing the evidence in favor of the non-moving party it cannot be said that at this point in the proceedings the United States is entitled to judgment as a matter of law.

## Conclusion

Accordingly, upon due consideration, it is ordered that:

(1) Plaintiff the United States' Motion for Summary Judgment (Doc. 18) is GRANTED to the extent that the Court finds and declares that (a) defendant John W. Todd is indebted to the United States for unpaid federal income taxes for the years 1996 and 1997 in the amount of $217,515.53 as of March 15, 2005, less later credits and payments, plus interest and statutory additions thereon as allowed by law from the dates of notice and demand; and (b) the United States has valid and subsisting federal tax liens that attach to all property and rights to property of defendant John W. Todd, and DENIED in all other respects;

(2) Defendant Michael J. Todd's Cross-motion for Summary Judgment (Doc. 24) is DENIED; and

(3) the Clerk is directed to withhold entry of judgment pending final resolution of the case as a whole.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 27th day of December, 2006.

*[signature]*

UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record
John W. Todd, *pro se*
Michael J. Todd, *pro se*